Prince Lobel Tye LLP
Patrick A. Fitch (State Bar No. 321493)
pfitch@princelobel.com
One International Place, Suite 3700
Boston, Massachusetts 02110
Telephone: +1 (617) 456-8000

Matthew D. Vella (State Bar No. 314548)
mvella@princelobel.com
2094 South Coast Highway, Suite 5C
Laguna Beach, California 92651
Telephone: +1 (617) 456-8000

Counsel for Advanced Surgical Concepts Limited and Atropos Limited

IN THE UNITED STATES DISTRICT COURT

FOR THE CENTRAL DISTRICT OF CALIFORNIA

| | |
|---|---|
| Advanced Surgical Concepts Limited and Atropos Limited,<br><br>Plaintiffs,<br><br>v.<br><br>Applied Medical Resources Corporation,<br><br>Defendant. | Civil Action No. 8:26-cv-02151<br><br>**COMPLAINT FOR PATENT INFRINGEMENT**<br><br>**Demand for Jury Trial** |

Plaintiffs Advanced Surgical Concepts Limited and Atropos Limited (together, "ASC") bring this action against Defendant Applied Medical Resources Corporation for infringement of ASC's patents.

**Nature of the Action**

1. This is a complaint for patent infringement under 35 U.S.C. § 281 and for declaratory judgment under 28 U.S.C. § 2201.

2. The asserted patents are directed to laparoendoscopic single-site ("LESS") surgery devices and tissue extraction devices for contained manual extraction.

3. LESS surgery is a minimally invasive surgical technique in which a surgeon operates through a single entry point, often a small abdominal incision through the umbilicus. LESS surgery is less invasive than traditional, multi-incision laparoendoscopic surgery—in which a surgeon operates through several entry points—resulting in shorter hospital stays, fewer wound infections, fewer post-operative complications, and faster recovery times.

4. Despite its benefits, LESS surgery presents unique procedural and technical challenges for surgeons compared to traditional multi-incision surgery. The main challenge relates to the introduction of and the ability to maneuver multiple instruments simultaneously through a single incision. Conventional access devices used in multi-incision laparoendoscopic surgery, such as trocars, are ineffective for LESS surgery as they cannot accommodate multiple instruments at once and pose a high risk of causing loss of pneumoperitoneal pressure during operation.

5. To address these challenges, ASC began developing new, novel, and improved methods and devices for facilitating the introduction and enhanced movement of multiple instruments in a single incision, ultimately creating its suite of LESS access devices, including R-Port, R-Port II, TriPort, TriPort+, QuadPort, and QuadPort+. ASC's patented techniques and LESS devices allow for more efficient and effective manual operation of instruments within a confined operative area while maintaining a controlled environment for surgery.

6. Contained tissue extraction is another minimally invasive surgical technique, which arose to minimize the risks that tissue extraction poses to patients, particularly the risk of tissue dissemination.

7. ASC developed and patented a first-of-its-kind tissue extraction device specifically designed to prevent tissue from escaping into the abdominal cavity during power and manual morcellation. ASC's patented techniques and suite of tissue containment and extraction devices, including the Pneumoliner and

Guardenia, also provide a uniquely designed guard which when deployed protects the containment bag, incision site, and surrounding abdominal cavity against inadvertent damage from sharp surgical instruments.

**The Parties**

1. Plaintiff Advanced Surgical Concepts Limited is a Private Company Limited by Shares organized under the laws of Ireland with principal offices at Unit 4, Sunnybank Centre, Upper Dargle Road, Bray, County Wicklow, A98 E339, Ireland.

2. Plaintiff Atropos Limited is a Private Company Limited by Shares organized under the laws of Ireland with an address at Unit 4, Sunnybank Centre, Upper Dargle Road, Bray, County Wicklow, A98 E339, Ireland.

3. Plaintiff Atropos Limited is a wholly owned subsidiary of Plaintiff Advanced Surgical Concepts Limited.

4. Defendant Applied Medical Resources Corporation is a privately held California corporation that maintains its corporate headquarters in this District at 22872 Avenida Empresa, Rancho Santa Margarita, California, 92688.

5. Defendant Applied Medical Resources Corporation has designated Sheri Dando as its registered agent, with a listed address for service of process also at 22872 Avenida Empresa, Rancho Santa Margarita, California, 92688.

6. Applied Medical Resources Corporation is the parent company of a multinational conglomerate that operates under the name "Applied Medical" and refers to itself as "a vertically integrated organization" that "design[s], develop[s] and manufacture[s] our products in-house." *See, e.g.*, https://appliedmedical.com/.

7. On information and belief, each constituent part of this "vertically integrated organization" is a directly or indirectly wholly owned subsidiary of Defendant Applied Medical Resources Corporation. ASC refers to these entities collectively as "Applied Medical."

8. On information and belief, each constituent part of this "vertically integrated organization" is part of the same corporate structure and distribution chain, and together they have acted in concert with respect to the facts alleged herein, such that any act of one person or entity is attributable to every other member of the Applied Medical organization and vice versa.

**Jurisdiction and Venue**

9. This Court has subject matter jurisdiction under 28 U.S.C. §§ 2201, 2202, 1331, and 1338(a). This case presents a federal question under 35 U.S.C. §§ 271, 281, 284, and 285.

10. This Court has general and specific personal jurisdiction over Applied Medical because Applied Medical conducts substantial business, directly and through its subsidiaries, in this District from at least its global headquarters in Rancho Santa Margarita, including business central to ASC's causes of action.

11. This Court has specific personal jurisdiction over Applied Medical because ASC's claims arise, in part, from Applied Medical's contacts with and activities in this District. Applied Medical has infringed the asserted patents within this District, directly and through its subsidiaries, by making, using, testing, selling, offering for sale, and importing infringing products and their components.

12. This Court also has general personal jurisdiction over Applied Medical because Applied Medical has maintained a presence in and transacts and conducts substantial business activity in this District, including from its global corporate headquarters. Applied Medical regularly conducts business in, engages in other persistent courses of conduct in, and derives substantial revenue from its business activities in this District. On information and belief, Applied Medical's operations in this District have included employing personnel who support infringing products, operating one or more offices, and controlling and directing the manufacture of

infringing products and their components. Applied Medical manufactures, offers for sale, and sells infringing products in this District in violation of 35 U.S.C. § 271.

13. Venue is proper in this District under 28 U.S.C. § 1400(b) because Applied Medical maintains regular and established places of business in this District and has committed acts of patent infringement in this District.

14. Applied Medical intends to do and does business in, has committed and continues to commit acts of infringement in this District directly, through intermediaries, by contributing to and through inducement of third parties, and offers its products or services, including those accused of infringement here, to customers and potential customers in this District.

15. On information and belief, while it has committed acts of infringement, Applied Medical has maintained a regular and established place of business in this District at 22872 Avenida Empresa, Rancho Santa Margarita, California, 92688.

**ASC's Asserted Patents**

16. U.S. Patent No. 7,998,068 ("the '068 patent"), titled "Instrument Access Device," issued on August 16, 2011. The '068 patent names as inventors Frank Bonadio, John Butler, and Trevor Vaugh. The application leading to the '068 patent was filed on October 11, 2005, and claims ultimate priority to U.S. Provisional Application No. 60/617,094, filed on October 12, 2004. Exhibit A contains a true and correct copy of the '068 patent.

17. U.S. Patent No. 8,187,178 ("the '178 patent"), titled "Instrument Access Device," issued on May 29, 2012. The '178 patent names as inventors Frank Bonadio, John Butler, Trevor Vaugh, and Shane MacNally. The application leading to the '178 patent was filed on June 5, 2008, and claims priority to U.S. Provisional Application Nos. 60/924,918, filed on June 5, 2007, 60/935,625, filed on August 22, 2007, and 60/996,760, filed on December 4, 2007. Exhibit B contains a true and correct copy of the '178 patent.

18. U.S. Patent No. 8,657,740 ("the '740 patent"), titled "Instrument Access Device," issued on February 25, 2014. The '740 patent names as inventors Frank Bonadio, Trevor Vaugh, Ronan McManus, Shane MacNally, and John Butler. The application leading to the '740 patent was filed on January 27, 2010, and is a continuation-in-part of U.S. Application No. 12/133,827, filed on June 5, 2008, which issued on May 29, 2012. The '740 patent claims priority to U.S. Provisional Application Nos. 60/924,918, filed on June 5, 2007, 60/935,625, filed on August 22, 2007, 60/996,760, filed on December 4, 2007, 61/147,625, filed on January 27, 2009, and 61/147,613, filed on January 27, 2009. Exhibit C contains a true and correct copy of the '740 patent.

19. U.S. Patent No. 9,271,753 ("the '753 patent"), titled "Surgical Device," issued on March 1, 2016. The '753 patent names as inventors John Butler, Frank Bonadio, Trevor Vaugh, Ronan McManus, Shane MacNally, Catherine Deegan, Alfred Cuschieri, and Alan Reid. The application leading to the '753 patent was filed on August 7, 2003, and claims priority to U.S. Provisional Application No. 60/401,760, filed on August 8, 2002. Exhibit D contains a true and correct copy of the '753 patent.

20. U.S. Patent No. 10,376,251 ("the '251 patent"), titled "Pneumoperitoneum Device," issued on August 13, 2019. The '251 patent names as inventors Kirk Shibley, Frank Bonadio, Trevor Vaugh, and Shane MacNally. The application leading to the '251 patent was filed on March 3, 2016, as a continuation of U.S. Application No. 13/725,148, and claims ultimate priority to U.S. Provisional Application Nos. 61/742,125, filed on August 3, 2012, and 61/580,088, filed on December 23, 2011. Exhibit E contains a true and correct copy of the '251 patent.

21. U.S. Patent No. 10,537,360 ("the '360 patent"), titled "Instrument Access Device," issued on January 21, 2020. The '360 patent names as inventors Frank Bonadio, Trevor Vaugh, Ronan McManus, Shane MacNally, and John Butler.

The application leading to the ’360 patent was filed on July 11, 2016, and claims ultimate priority to U.S. Provisional Application Nos. 61/147,613, filed on January 27, 2009, 61/147,625, filed on January 27, 2009, 60/996,760, filed on December 4, 2007, 60/935,625, filed on August 22, 2007, and 60/924,918, filed on June 5, 2007. Exhibit F contains a true and correct copy of the ’360 patent.

22. Each of ASC’s asserted patents is presumed valid and enforceable under 35 U.S.C. § 282.

23. ASC, through its sole ownership of Atropos Limited and exclusive license to and rights to sublicense patents held by Atropos Limited, owns all right, title, and interest in the asserted patents, including the right to assert all causes of action involving the asserted patents and the right to any remedies for infringement, including for past damages.

**Count I**

**(Infringement of U.S. Patent No. 7,998,068)**

24. ASC reincorporates the preceding paragraphs as if fully set forth herein.

25. The ’068 patent teaches an instrument access device consisting of a tubular-shaped member—also referred to as an instrument working channel—coupled to a sealing member, capable of moving in a proximal and distal direction relative to the operative area without detaching the sealing member from the instrument access device.

26. The invention described in the ’068 patent addresses the challenge of maintaining pneumoperitoneum during proximal (movement away from the operative area) and distal (movement toward or into the operative area) movement of an instrument within an access port. When used as an access port, a cannula is inserted through the abdominal wall and held in place by the tension of the abdominal wall surrounding the cannula. This tension prevents insufflation gas from escaping, thereby maintaining pneumoperitoneum in the operative area. However,

repeated proximal and distal movement of instruments can weaken this tension or cause the cannula to slip within or out of the incision, allowing gas to escape. These risks are exacerbated by the rigidity of cannulae, which inherently restrict instrument movement. The ’068 patent instead teaches an instrument working channel that may be inserted through the abdominal wall like a cannula to introduce instruments, but which is flexible while remaining anchored to a valve and/or seal at its distal end and to a proximal assembly secured to the abdominal wall. This configuration allows for proximal and distal movement of an instrument within the working channel while maintaining the seal necessary to preserve pneumoperitoneum.

27. Applied Medical has infringed and continues to infringe, literally or by the doctrine of equivalents, at least claim 1 of the ’068 patent by making, using, testing, selling, offering for sale, or importing into the U.S. products and services covered by the ’068 patent.

28. Applied Medical’s products that infringe the ’068 patent include, for example, its GelPOINT Advanced Access Platform, GelPOINT Mini Advanced Access Platform, and GelPOINT V-Path Transvaginal Access Platform (collectively, “accused Access Platforms”).

29. Applied Medical’s accused Access Platforms are designed to “enable minimally invasive surgery by providing a flexible, air-tight fulcrum to facilitate triangulation of standard instrumentation.” [https://www.appliedmedical.com/Products/GelPOINT](https://www.appliedmedical.com/Products/GelPOINT). Applied Medical touts the accused Access Platforms as being able to increase “the range of motion of the instruments and maximizing retraction and exposure, … provid[ing] utmost versatility and access for a wide range of abdominal, transanal, and transvaginal procedures.” *Id.*

30. Claim 1 of the ’068 patent reads:

An instrument access device, comprising:

a retractor assembly including

a distal member,

a proximal member, and

a retracting sleeve extending between the distal member and the proximal member, wherein a retraction force of the retractor assembly is adjusted by reducing an amount of retracting sleeve material extending between a proximal portion of the proximal member and the distal member;

a seal member; and

a connector assembly coupling the seal member and the proximal member, the connector assembly including a tubular-shaped member and a rigid ring member, the tubular-shaped member having a constant diameter section, the tubular-shaped member extending proximal of the proximal member such that the seal member is located proximal of the proximal member, the tubular-shaped member being capable of tilting to tilt the seal member relative to the retractor assembly without decoupling the seal member from the proximal member, and the ring member coupled to the seal member.

31. A claim chart showing an example of how Applied Medical infringes the ’068 patent accompanies this Complaint as Exhibit A-1.

32. Applied Medical is currently and has been an active inducer of infringement of the ’068 patent under 35 U.S.C. § 271(b) and a contributory infringer under 35 U.S.C. § 271(c).

33. On information and belief, Applied Medical has known about the ’068 patent, or should have known but was willfully blind to its existence, since at least June 2, 2026, when Applied Medical received a letter from ASC providing notice of ASC’s belief that Applied Medical’s products and services infringe the ’068 patent.

In no event is Applied Medical's knowledge of the '068 patent later than the date of service of this Complaint.

34. At least as early as Applied Medical's knowledge of the '068 patent, Applied Medical has indirectly infringed the '068 patent in the United States by inducement under 35 U.S.C. § 271(b). Applied Medical provides these products or services and provides instruction on their use to others, such as customers and partners, who provision for use, offer for sale, or sell in the U.S. products or services that directly infringe at least claim 1 of the '068 patent. *See, e.g.*, https://www.youtube.com/watch?v=wub3y-OHulI; https://www.youtube.com/watch?v=yDUb_5KNUNY; https://www.youtube.com/watch?v=O00FSLroUXY.

35. Applied Medical also contributes to the infringement of the '068 patent by others. Applied Medical knowingly provides products and services that, when configured by Applied Medical's customers, partners, agents, or affiliates, result in a system that directly infringes at least claim 1 of the '068 patent. These products and services have no substantial non-infringing uses or include one or more separate and distinct components especially made or adapted for use in infringement of the '068 patent that are not staple articles or commodities of commerce suitable for substantial non-infringing use. *See, e.g.*, *id*.

36. ASC has complied with any applicable marking and notice provisions of 35 U.S.C. § 287 with respect to the '068 patent at least because ASC maintains a public web address identifying the '068 patent at https://advancedsurgical.ie/patent-information/.

37. ASC may recover pre-suit, lost profits, and any other available damages for Applied Medical's infringement of the '068 patent under 35 U.S.C. § 287.

**Count II**

**(Infringement of U.S. Patent No. 8,187,178)**

38. ASC reincorporates the preceding paragraphs as if fully set forth herein.

39. The ’178 patent teaches an instrument access device comprising at least a first instrument seal to effect a seal around a first instrument extended through the device and a second instrument seal to effect a seal around a second instrument extended through the device. The seal may be of a gelatinous elastomeric material. The instrument seals are configured to be arranged in a sealing relationship to a body of a patient. The device also comprises a distal anchoring ring for location within a wound interior and a retractor member extending proximally from the distal anchoring ring to retract laterally the sides of a wound opening.

40. The invention described in the ’178 patent addresses the challenge of maintaining pneumoperitoneum during lateral movement of an instrument within an access port through the abdominal wall of a patient. The ’178 patent teaches, as one example, placement of at least two instrument seals to allow lateral movement of instruments extending through at least two instrument seals without loss of pneumoperitoneum.

41. Applied Medical has infringed and continues to infringe, literally or by the doctrine of equivalents, at least claim 1 of the ’178 patent by making, using, testing, selling, offering for sale, or importing into the U.S. products and services covered by the ’178 patent.

42. Applied Medical’s products that infringe the ’178 patent include, for example, its accused Access Platforms.

43. Applied Medical’s accused Access Platforms are designed to “enable minimally invasive surgery by providing a flexible, air-tight fulcrum to facilitate triangulation of standard instrumentation.” https://www.appliedmedical.com/Products/GelPOINT. Applied Medical touts the accused Access Platforms as being able to increase “the range of motion of the instruments and maximizing retraction and exposure, … provid[ing] utmost versatility and access for a wide range of abdominal, transanal, and transvaginal procedures.” *Id*.

44. Claim 1 of the ’178 patent reads:

An instrument access device comprising:

a wound retractor including:

a proximal ring-shaped portion for location externally of a wound opening;

a distal ring-shaped portion for location within a wound interior;

a retraction portion extending proximally from the distal portion to the proximal portion to retract laterally the sides of the wound opening; and

a seal assembly including:

a first instrument seal spaced proximally the proximal ring-shaped portion of the wound retractor and laterally movable with respect to the proximal ring-shaped portion;

a second instrument seal spaced proximally the proximal ring-shaped portion of the wound retractor and laterally movable with respect to the proximal ring-shaped portion;

a third instrument seal spaced proximally the proximal ring-shaped portion of the wound retractor and laterally movable with respect to the proximal ring-shaped portion; and

the first instrument seal being larger than the second and third instrument seals; the second and third instrument seals having substantially the same size; and the first, second, and third instrument seals being oriented in a generally triangular at-rest configuration.

45. A claim chart showing an example of how Applied Medical infringes the ’178 patent accompanies this Complaint as Exhibit B-1.

46. Applied Medical currently is and has been an active inducer of infringement of the ’178 patent under 35 U.S.C. § 271(b) and a contributory infringer under 35 U.S.C. § 271(c).

47. On information and belief, Applied Medical has known about the ’178 patent, or should have known but was willfully blind to its existence, since at least June 2, 2026, when Applied Medical received a letter from ASC providing notice of ASC’s belief that Applied Medical’s products and services infringe the ’178 patent. In no event is Applied Medical’s knowledge of the ’178 patent later than the date of service of this Complaint.

48. At least as early as Applied Medical’s knowledge of the ’178 patent, Applied Medical has indirectly infringed the ’178 patent in the United States by inducement under 35 U.S.C. § 271(b). Applied Medical knowingly and intentionally induces infringement of the ’178 patent by inducing others to make, use, offer for sale, or sell in the U.S. products or services covered by the ’178 patent. Applied Medical provides these products or services and provides instruction on their use to others, such as customers and partners, who provision for use, offer for sale, or sell in the U.S. products or services that directly infringe at least claim 1 of the ’178 patent. *See, e.g.*, https://www.youtube.com/watch?v=wub3y-OHulI; https://www.youtube.com/watch?v=yDUb_5KNUNY; https://www.youtube.com/watch?v=O00FSLroUXY; https://www.youtube.com/watch?v=t5ZWxApbREk/.

49. Applied Medical also contributes to the infringement of the ’178 patent by others. Applied Medical knowingly provides products and services that, when configured by Applied Medical’s customers, partners, agents, or affiliates, result in a system that directly infringes at least claim 1 of the ’178 patent. These products and services have no substantial non-infringing uses or include one or more separate and distinct components especially made or adapted for use in infringement of the ’178

patent that are not staple articles or commodities of commerce suitable for non-infringing use. *See, e.g.*, *id*.

50. ASC has complied with any applicable marking and notice provisions of 35 U.S.C. § 287 with respect to the ’178 patent at least because ASC maintains a public web address identifying the ’178 patent at https://advancedsurgical.ie/patent-information/.

51. ASC may recover pre-suit, lost profits, and any other available damages for Applied Medical’s infringement of the ’178 patent under 35 U.S.C. § 287.

**Count III**

**(Infringement of U.S. Patent No. 8,657,740)**

52. ASC reincorporates the preceding paragraphs as if fully set forth herein

53. The ’740 patent teaches an instrument access device comprising first, second, and third instrument seals for sealing around instruments extended through the device. These seals have respective connector sleeves. Each sleeve connects a base to one of the instrument seals. The device also comprises two insufflation/ desufflation ports. Each of the ports comprises a connector extending from the base, a tube extending from the connector, a luer connector, and a removable cap. The luer connector is used for connection to any suitable supply line for insufflation gas or for discharge of insufflation gas. In use, the insufflation/desufflation ports facilitate independent control of insufflation and desufflation as may be required during a surgical procedure. The sleeve at the proximal end is cut-off, folded over the inner proximal ring and is held in place between the base and the inner proximal ring when the base is fitted.

54. The invention described in the ’740 patent addresses the challenge of maintaining pneumoperitoneum during movement of an instrument within an access port through the abdominal wall of a patient. The ’740 patent teaches, as one example, a first connector member extending between a first instrument seal and a

proximal ring-shaped seal, and a second connector member extending between a second instrument seal and the proximal ring-shaped seal, and in which the connector members have smaller outer radial diameters than the proximal ring-shaped seal.

55. Applied Medical has infringed and continues to infringe, literally or by the doctrine of equivalents, at least claim 1 of the ’740 patent by making, using, testing, selling, offering for sale, or importing into the U.S. products and services covered by the ’740 patent.

56. Applied Medical’s products that infringe the ’740 patent include, for example, its accused Access Platforms.

57. Applied Medical’s accused Access Platforms are designed to “enable minimally invasive surgery by providing a flexible, air-tight fulcrum to facilitate triangulation of standard instrumentation.” https://www.appliedmedical.com/Products/GelPOINT. Applied Medical touts the accused Access Platforms as being able to increase “the range of motion of the instruments and maximizing retraction and exposure, … provid[ing] utmost versatility and access for a wide range of abdominal, transanal, and transvaginal procedures.” *Id.*

58. Claim 1 of the ’740 patent reads:

An instrument access device, comprising:

a first instrument seal to effect a seal around a first instrument extended through the device, and

a second instrument seal to effect a seal around a second instrument extended through the device, the instrument seals being configured to be arranged in sealing relationship to a body of a patient;

a distal anchoring member for location within a wound interior;

a proximal member for location externally of a wound opening;

a retractor member extending proximally from the distal anchoring member to retract laterally the sides of the wound opening, wherein the retractor member includes a proximal portion for location externally of the wound opening, and retraction is adjusted by shortening an axial extent of the retractor member between the proximal member and the distal anchoring member by moving the proximal portion of the retractor member; and

a connector member to connect the proximal member to the instrument seals, the proximal member being configured for assisting in retaining a proximal end of the retractor member,

wherein the outer radial dimension of the connector member is less than that of the proximal member.

59. A claim chart showing an example of how Applied Medical infringes the ’740 patent accompanies this Complaint as Exhibit C-1.

60. Applied Medical currently is and has been an active inducer of infringement of the ’740 patent under 35 U.S.C. § 271(b) and a contributory infringer under 35 U.S.C. § 271(c).

61. On information and belief, Applied Medical has known about the ’740 patent, or should have known but was willfully blind to its existence, since at least June 2, 2026, when Applied Medical received a letter from ASC providing notice of ASC’s belief that Applied Medical’s products and services infringe the ’740 patent. In no event is Applied Medical’s knowledge of the ’740 patent later than the date of service of this Complaint.

62. At least as early as Applied Medical’s knowledge of the ’740 patent, Applied Medical has indirectly infringed the ’740 patent in the United States by

inducement under 35 U.S.C. § 271(b). Applied Medical knowingly and intentionally induces infringement of the ’740 patent by inducing others to make, use, offer for sale, or sell in the U.S. products or services covered by the ’740 patent. Applied Medical provides these products or services and provides instruction on their use to others, such as customers and partners, who provision for use, offer for sale, or sell in the U.S. products or services that directly infringe at least claim 1 of the ’740 patent. *See, e.g.*, https://www.youtube.com/watch?v=wub3y-OHulI; https://www.youtube.com/watch?v=yDUb_5KNUNY; https://www.youtube.com/watch?v=O00FSLroUXY; https://www.youtube.com/watch?v=t5ZWxApbREk/.

63. Applied Medical also contributes to the infringement of the ’740 patent by others. Applied Medical knowingly provides products and services that, when configured by Applied Medical’s customers, partners, agents, or affiliates, result in a system that directly infringes at least claim 1 of the ’740 patent. These products and services have no substantial non-infringing uses or include one or more separate and distinct components especially made or adapted for use in infringement of the ’740 patent that are not staple articles or commodities of commerce suitable for substantial non-infringing use. *See, e.g., id*.

64. ASC has complied with any applicable marking and notice provisions of 35 U.S.C. § 287 with respect to the ’740 patent at least because ASC maintains a public web address identifying the ’740 patent at https://advancedsurgical.ie/patent-information/.

65. ASC may recover pre-suit, lost profits, and any other available damages for Applied Medical’s infringement of the ’740 patent under 35 U.S.C. § 287.

**Count IV**

**(Infringement of U.S. Patent No. 9,271,753)**

66. ASC reincorporates the preceding paragraphs as if fully set forth herein.

67. The ’753 patent teaches a surgical device consisting of a sealing member including at least three accessways to facilitate sealed access into the abdominal cavity when the axes of at least two of the accessways converge to a point below a circumferential extent of the sealing member.

68. The invention described in the ’753 patent solves the problem of maintaining pneumoperitoneum when inserting surgical instruments, or in some cases a surgeon’s forearm, into the abdominal cavity by providing an apparatus for sealed access of the instrument through the seal into the cavity. The sealing member described by the ’753 patent uses a dual seal arrangement, as well as multiple accessways, to facilitate the passage of an object, such as a surgeon’s forearm, through the device into the body cavity while maintaining a seal. For example, the sealing member may have three accessways, one of which is located offset from the other two accessways to prevent leakage of insufflation gas through the sealing member.

69. Applied Medical has infringed and continues to infringe, literally or by the doctrine of equivalents, at least claim 1 of the ’753 patent by making, using, testing, selling, offering for sale, or importing into the U.S. products and services covered by the ’753 patent.

70. Applied Medical’s products that infringe the ’753 patent include, for example, its accused Access Platforms.

71. Applied Medical’s accused Access Platforms are designed to “enable minimally invasive surgery by providing a flexible, air-tight fulcrum to facilitate triangulation of standard instrumentation.” https://www.appliedmedical.com/Products/GelPOINT. Applied Medical touts the accused Access Platforms as being able to increase “the range of motion of the instruments and maximizing retraction and exposure, … provid[ing] utmost versatility and access for a wide range of abdominal, transanal, and transvaginal procedures.” *Id.*

72. Claim 1 of the ’753 patent reads:

A surgical device, comprising:

a longitudinal axis;

a distal ring;

a proximal ring;

a wound retracting sleeve extending between the proximal ring and the distal ring and movable from an insertion configuration to a retracting configuration to retract laterally a wound opening so that an overall amount of sleeve extending between the distal ring and the proximal ring is less in the retracting configuration than in the insertion configuration, an opening through the wound retracting sleeve approaching a diameter of at least one of the distal ring and proximal ring as the would retracting sleeve moves from the insertion configuration to the retracting configuration, and an axial extent between the distal ring and the proximal ring being shorter in the retracting configuration than in the insertion configuration; and

a sealing member coupled to the proximal ring, the sealing member including

a dome shape when in use, and

at least three accessways on the dome shape to facilitate sealed access through the retracted opening, the accessways being located an axial distance proximal the proximal ring and configured to seal surgical instruments extending through the accessways, axes of at least two of the accessways converging to a point, the point being located below a circumferential extent of

the sealing member, wherein the axes of at least two of the accessways and an axis of the sealing member are coplanar.

73. A claim chart showing an example of how Applied Medical infringes the ’753 patent accompanies this Complaint as Exhibit D-1.

74. Applied Medical currently is and has been an active inducer of infringement of the ’753 patent under 35 U.S.C. § 271(b) and a contributory infringer under 35 U.S.C. § 271(c).

75. On information and belief, Applied Medical has known about the ’753 patent, or should have known but was willfully blind to its existence, since at least June 2, 2026, when Applied Medical received a letter from ASC providing notice of ASC’s belief that Applied Medical’s products and services infringe the ’753 patent. In no event is Applied Medical’s knowledge of the ’753 patent later than the date of service of this Complaint.

76. At least as early as Applied Medical’s knowledge of the ’753 patent, Applied Medical has indirectly infringed the ’753 patent in the United States by inducement under 35 U.S.C. § 271(b). Applied Medical knowingly and intentionally induces infringement of the ’753 patent by inducing others to make, use, offer for sale, or sell in the U.S. products or services covered by the ’753 patent. Applied Medical provides these products or services and provides instruction on their use to others, such as customers and partners, who provision for use, offer for sale, or sell in the U.S. products or services that directly infringe at least claim 1 of the ’753 patent. *See, e.g.*, https://www.youtube.com/watch?v=wub3y-OHulI; https://www.youtube.com/watch?v=yDUb_5KNUNY; https://www.youtube.com/watch?v=O00FSLroUXY; https://www.youtube.com/watch?v=t5ZWxApbREk/.

77. Applied Medical also contributes to the infringement of the ’753 patent by others. Applied Medical knowingly provides products and services that, when configured by Applied Medical’s customers, partners, agents, or affiliates, result in a

system that directly infringes at least claim 1 of the ’753 patent. These products and services have no substantial non-infringing uses or include one or more separate and distinct components especially made or adapted for use in infringement of the ’753 patent that are not staple articles or commodities of commerce suitable for substantial non-infringing use. *See, e.g.*, *id*.

78. ASC has complied with any applicable marking and notice provisions of 35 U.S.C. § 287 with respect to the ’753 patent at least because ASC maintains a public web address identifying the ’753 patent at https://advancedsurgical.ie/patent-information/.

79. ASC may recover pre-suit, lost profits, and any other available damages for Applied Medical’s infringement of the ’753 patent under 35 U.S.C. § 287.

**Count V**

**(Infringement of U.S. Patent No. 10,376,251)**

80. ASC reincorporates the preceding paragraphs as if fully set forth herein.

81. The ’251 patent teaches a tissue containment system in which a tissue container including one or more openings may be placed within a body cavity. Excised tissue may be placed within the opening of the system. One or more openings of the system may be withdrawn outside the body cavity and the system inflated. Instruments including laparoscopic visualization may be placed within parts of the inflated system that remain within the body cavity. The tissue may subsequently be removed from the patient’s body.

82. The invention described in the ’251 patent addresses the need for surgeons to remove tissue—*e.g.*, viscera—from a patient in a minimally invasive way that also allows better maintenance of sterility during surgery. Before the invention of the ’251 patent, surgeons performed open surgery to extract tissue from the body of a patient. The invention of the ’251 patent allows surgeons to perform such procedures laparoscopically, thus improving patient safety and recovery.

83. Applied Medical has infringed and continues to infringe, literally or by the doctrine of equivalents, at least claim 1 of the ’251 patent by making, using, testing, selling, offering for sale, or importing into the U.S. products and services covered by the ’251 patent.

84. Applied Medical’s products that infringe the ’251 patent include, for example, its Alexis Contained Extraction System (“Alexis CES”). https://www.appliedmedical.com/products/alexis/ces.

85. Applied Medical’s Alexis CES “creates a contained environment for transabdominal and transvaginal tissue extraction during minimally invasive surgery.” *Id*. “The system can be customized to accommodate different patient anatomies and to support multiport, reduced-port, and single-incision techniques.” *Id*.

86. Claim 1 of the ’251 patent reads:

A tissue containment system, comprising:

a tissue containment bag, including:

an open end,

a closed end opposite the open end,

a wall extending from the open end to the closed end, wherein the wall has an interior surface, and

a tissue containment chamber defined by the wall and the closed end;

a guard for protecting at least part of the wall, wherein the guard includes a portion having:

an exterior for engaging the interior surface of the wall, and

an interior defining a passageway for receiving an instrument, wherein the portion of the guard is expandable toward the interior surface of the wall into an expanded configuration,

and compressible into a compressed configuration,

wherein the open end of the tissue containment bag includes an opening defined by an annular ring coupled to the wall, and

wherein a diameter of the annular ring is greater than a diameter of a widest part of the guard.

87. A claim chart showing an example of how Applied Medical infringes the ’251 patent accompanies this Complaint as Exhibit E-1.

88. Applied Medical currently is and has been an active inducer of infringement of the ’251 patent under 35 U.S.C. § 271(b) and a contributory infringer under 35 U.S.C. § 271(c).

89. On information and belief, Applied Medical has known about the ’251 patent, or should have known but was willfully blind to its existence, since at least since June 2, 2026, when Applied Medical received a letter from ASC providing notice of ASC’s belief that Applied Medical’s products and services infringe the ’251 patent. In no event is Applied Medical’s knowledge of the ’251 patent later than the date of service of this Complaint.

90. At least as early as Applied Medical’s knowledge of the ’251 patent, Applied Medical has indirectly infringed the ’251 patent in the United States by inducement under 35 U.S.C. § 271(b). Applied Medical knowingly and intentionally induces infringement of the ’251 patent by inducing others to make, use, offer for sale, or sell in the U.S. products or services covered by the ’251 patent. Applied Medical provides these products or services and provides instruction on their use to others, such as customers and partners, who provision for use, offer for sale, or sell in the U.S. products or services that directly infringe at least claim 1 of the ’251 patent. *See, e.g.*, https://www.youtube.com/watch?v=7MmqHVDNMgM.

91. Applied Medical also contributes to the infringement of the ’251 patent by others. Applied Medical knowingly provides products and services that, when

configured by Applied Medical's customers, partners, agents, or affiliates, result in a system that directly infringes at least claim 1 of the '251 patent. These products and services have no substantial non-infringing uses or include one or more separate and distinct components especially made or adapted for use in infringement of the '251 patent that are not staple articles or commodities of commerce suitable for substantial non-infringing use. *See, e.g.*, *id*.

92. ASC has complied with any applicable marking and notice provisions of 35 U.S.C. § 287 with respect to the '251 patent at least because ASC maintains a public web address identifying the '251 patent at https://advancedsurgical.ie/patent-information/.

93. ASC may recover pre-suit, lost profits, and any other available damages for Applied Medical's infringement of the '251 patent under 35 U.S.C. § 287.

**Count VI**

**(Infringement of U.S. Patent No. 10,537,360)**

94. ASC reincorporates the preceding paragraphs as if fully set forth herein.

95. The '360 patent teaches a surgical device consisting of a plurality of instrument seals connected to a base by respective connection sleeves. The device also includes a wound retraction system for retracting a wound opening.

96. The invention described in the '360 patent solves the problem of maintaining pneumoperitoneum when inserting surgical instruments into the abdominal cavity by providing an apparatus for sealed access of the instrument through the seal into the cavity. The sealing member described by the '360 patent includes sleeves connecting instrument seals to a common base. This configuration allows a surgeon to independently manipulate a plurality of instruments independently of one another, thereby facilitating minimally invasive laparoscopic surgery through a single incision.

97. Applied Medical has infringed and continues to infringe, literally or by the doctrine of equivalents, at least claim 8 of the ’360 patent by making, using, testing, selling, offering for sale, or importing into the U.S. products and services covered by the ’360 patent.

98. Applied Medical’s products that infringe the ’360 patent include, for example, its accused Access Platforms.

99. Applied Medical’s accused Access Platforms are designed to “enable minimally invasive surgery by providing a flexible, air-tight fulcrum to facilitate triangulation of standard instrumentation.” https://www.appliedmedical.com/Products/GelPOINT. Applied Medical touts the accused Access Platforms as being able to increase “the range of motion of the instruments and maximizing retraction and exposure, … provid[ing] utmost versatility and access for a wide range of abdominal, transanal, and transvaginal procedures.” *Id.*

100. Claim 8 of the ’360 patent reads:

An instrument access device, comprising:

a wound retractor, including:

a proximal ring;

a distal ring, and

a retractor sleeve extending proximally from the distal ring to the proximal ring; and

a proximal assembly mounted to the proximal ring, the proximal assembly including:

an instrument seal assembly, wherein the instrument seal assembly includes a plurality of tubular portions, each of the tubular portions having sealing element at an end thereof, and wherein the sealing elements are laterally spaced from each other and do not overlap in an axial direction, and

an outer ring extending radially around: (i) an outer periphery of the proximal ring, and (ii) an outer periphery of a distal end of the instrument seal assembly,

wherein a portion of the retractor sleeve is configured to extend into a region between (i) a radially outermost edge of the proximal ring, and (ii) the outer ring.

101. A claim chart showing an example of how Applied Medical infringes the ’360 patent accompanies this Complaint as Exhibit F-1.

102. Applied Medical currently is and has been an active inducer of infringement of the ’360 patent under 35 U.S.C. § 271(b) and a contributory infringer under 35 U.S.C. § 271(c).

103. On information and belief, Applied Medical has known about the ’360 patent, or should have known but was willfully blind to its existence, since at least since June 2, 2026, when Applied Medical received a letter from ASC providing notice of ASC’s belief that Applied Medical’s products and services infringe the ’360 patent. In no event is Applied Medical’s knowledge of the ’360 patent later than the date of service of this Complaint.

104. At least as early as Applied Medical’s knowledge of the ’360 patent, Applied Medical has indirectly infringed the ’360 patent in the United States by inducement under 35 U.S.C. § 271(b). Applied Medical knowingly and intentionally induces infringement of the ’360 patent by inducing others to make, use, offer for sale, or sell in the U.S. products or services covered by the ’360 patent. Applied Medical provides these products or services and provides instruction on their use to others, such as customers and partners, who provision for use, offer for sale, or sell in the U.S. products or services that directly infringe at least claim 1 of the ’360 patent. *See, e.g.*, https://www.youtube.com/watch?v=wub3y-OHulI; https://www.

youtube.com/watch?v=yDUb_5KNUNY; https://www.youtube.com/watch?v=O00FSLroUXY; https://www.youtube.com/watch?v=t5ZWxApbREk/.

105. Applied Medical also contributes to the infringement of the ’360 patent by others. Applied Medical knowingly provides products and services that, when configured by Applied Medical’s customers, partners, agents, or affiliates, result in a system that directly infringes at least claim 8 of the ’360 patent. These products and services have no substantial non-infringing uses or include one or more separate and distinct components especially made or adapted for use in infringement of the ’360 patent that are not staple articles or commodities of commerce suitable for substantial non-infringing use. *See, e.g.*, *id*.

106. ASC has complied with any applicable marking and notice provisions of 35 U.S.C. § 287 with respect to the ’360 patent at least because ASC maintains a public web address identifying the ’360 patent at https://advancedsurgical.ie/patent-information/.

107. ASC may recover pre-suit, lost profits, and any other available damages for Applied Medical’s infringement of the ’360 patent under 35 U.S.C. § 287.

## Prayer for Relief

WHEREFORE, ASC asks the Court to enter judgment as follows:

A. Declare that Applied Medical has infringed and continues to infringe each of the asserted patents identified in Counts I-VI;

B. Award ASC damages in an amount to be proven at trial, but in no event less than a reasonable royalty, to compensate ASC for Applied Medical’s infringement, plus pre- and post-judgment interest at the maximum permissible rate;

C. Award ASC treble damages, costs, and attorney’s fees because of Applied Medical’s willful infringement under 35 U.S.C. § 284;

D. Award ASC its costs, disbursements, and fees under 35 U.S.C. § 285;

E. Permanently enjoin Applied Medical, its officers, agents, affiliates, employees, attorneys, and all others acting in concert from infringing the asserted patents; and

F. Award any other relief the Court deems just and proper.

## Demand for Jury Trial

ASC demands a trial by jury for all triable claims under Fed. R. Civ. P. 38.

Respectfully submitted,

Dated: August 7, 2026

By: */s/ Patrick A. Fitch*

**Prince Lobel Tye LLP**
Patrick A. Fitch
pfitch@princelobel.com
(State Bar No. 321493)
One International Place, Suite 3700
Boston, Massachusetts 02110
Telephone: +1 (617) 456-8000
Facsimile: +1 (617) 456-8100

Matthew D. Vella
mvella@princelobel.com
(State Bar No. 314548)
2094 S. Coast Highway, Suite 5C
Laguna Beach, California 92651
Telephone: +1 (617) 456-8000

*Counsel for*
*Advanced Surgical Concepts Limited*
*and Atropos Limited*